# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

| | |
|---|---|
| In Re:<br>CVAH, Inc.,<br><br>     Debtor. | Bankruptcy Case<br>No. 14-00888-JDP |

---

| | |
|---|---|
| Noah G. Hillen,<br>Chapter 7 Trustee,<br><br>     Plaintiff,<br>vs.<br><br>City of Many Trees, LLC,<br><br>     Defendant. | Adv. Proceeding<br>No. 15-06030-JDP |
| Noah G. Hillen,<br>Chapter 7 Trustee,<br><br>     Plaintiff,<br>vs.<br><br>Barclays Bank PLC,<br><br>     Defendant. | Adv. Proceeding<br>No. 15-06031-JDP |

MEMORANDUM OF DECISION – 1

Noah G. Hillen,
Chapter 7 Trustee,

                                   Plaintiff,

vs.                                              Adv. Proceeding
                                                 No. 15-06046-JDP
Idaho Power Co.,

                                   Defendant.

_____

Noah G. Hillen,
Chapter 7 Trustee,

                                   Plaintiff,

vs.                                              Adv. Proceeding
                                                 No. 16-06014-JDP
U.S. Bank, N.A.,

                                   Defendant.

_____

**MEMORANDUM OF DECISION**

_____

**Appearances:**

Matthew Christensen, Boise, Idaho, Attorney for Plaintiff Noah G.
Hillen, Chapter 7 Trustee.

MEMORANDUM OF DECISION – 2

Jed Manwaring, Boise, Idaho, Attorney for Defendants City of Many Trees, LLC and Idaho Power Company.

Daniel Glynn, Boise, Idaho, Attorney for Defendant U.S. Bank, N.A.

Brian Peterson, Mountain Home, Idaho, Attorney for Defendant Barclays Bank PLC.

### *Introduction*

The Bankruptcy Code clothes a bankruptcy trustee with special powers to "avoid", or undo, transfers made by a debtor to others, in some situations, several years before a bankruptcy case is commenced. In designing bankruptcy proceedings to treat a debtor's creditors equitably, the trustee's avoiding powers serve to prevent a debtor from interfering with its creditor's rights to fairly share in a limited pool of assets by conveying cash or property to others without, for example, receiving reasonably equivalent value in return. In addition, giving a trustee special, federal bankruptcy avoiding powers, the Bankruptcy Code allows trustees to "step into the shoes" of existing creditors to assert their rights under "applicable law" to challenge the debtor's prebankruptcy transfers.

MEMORANDUM OF DECISION – 3

In these four adversary proceedings, a bankruptcy trustee seeks to avoid transfers made by a corporate debtor during the years prior to its bankruptcy.  Because these cash payments did not satisfy any debts legally owed by the debtor, the trustee alleges the transfers resulted in no benefit to the debtor, and under applicable law, could have been avoided by the debtor's major current creditor, IRS.  The stakes are high: by standing in the shoes of IRS, Trustee seeks to recover a combined total of about $357,000 in these four actions.  The defendants who received the transfers from the debtor are resisting the trustee's efforts.

This decision examines the nearly identical motions to dismiss filed by each of the defendants in these four separate, but related, adversary proceedings prosecuted by plaintiff Noah Hillen ("Trustee"), the chapter 7[1] trustee in the bankruptcy case of debtor CVAH, Inc. ("CVAH").  *See Hillen v. City of Many Trees, LLC*, 15-06030-JDP, Dkt. No. 40; *Hillen v.*

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION – 4

*Barclays Bank PLC*, 15-06031-JDP, Dkt. No. 37; *Hillen v. Idaho Power Co.*, 15-06046, Dkt. No. 38; *Hillen v. U.S. Bank, N.A.*, 16-06014-JDP, Dkt. No. 34 (collectively, "the motions"). Trustee opposes the motions. *See City of Many Trees*, Tr.'s Resp., Dkt. No. 55 (and identical responses filed in each of the adversary proceedings). The motions challenge Trustee's legal right to avoid what Trustee alleges were constructively fraudulent transfers made to the defendants by CVAH to pay the personal debts of its owner and others prior to its bankruptcy filing.

The Court conducted a consolidated hearing concerning the dismissal motions, at which the parties presented oral argument and responded to the Court's questions, on March 8, 2017. At the conclusion of the hearing, the Court took the issues raised by the motions under advisement. Having considered the parties' briefs, oral arguments, and the applicable law, this Memorandum of Decision explains the Court's reasons for its decision to deny the motions.

### Factual Allegations

As alleged in Trustee's complaints against the defendants, CVAH

MEMORANDUM OF DECISION – 5

was organized and operated to provide veterinary services to its

customers.  Compl. at 3.[2]  CVAH's assets consisted of the income

generated by the vet practice, including the cash flowing through its bank

accounts, and a modest assortment of office furniture, equipment and

supplies.  *Id.*  The only licensed veterinarian ever employed by CVAH was

Richard Koritansky ("Koritansky").  *Id.*  CVAH also occasionally

employed members of Koritansky's family in other positions.  *Id.*

CVAH failed to pay corporate income taxes owed to both the

Internal Revenue Service ("IRS") and the Idaho State Tax Commission

("the ISTC") for calendar years 2009 through 2013.  *Id.* at 3–5.  When

CVAH later failed and filed a chapter 7 bankruptcy case on May 27, 2014,

CVAH owed IRS and the ISTC a total of approximately $1.5 million.  *Id.* at

---

[2] The contents of the complaints in each case are identical save for the
information regarding the defendants, and the specific dates and amounts of the
transfers they received.  *Compare City of Many Trees*, Second Am. Compl., Dkt.
No. 38 *with Barclays Bank*, Second Am. Compl., Dkt. No. 35 and *Idaho Power*,
Second Am. Compl., Dkt. No. 36 and *U.S. Bank*, First Am. Compl., Dkt. No. 31.
For brevity, except where otherwise indicated, the Court will reference the
complaint's allegations in *City of Many Trees* as representative of all of the
complaints.

MEMORANDUM OF DECISION – 6

2, 5.

In the six years leading up to the petition date, CVAH made a large

number of payments from its bank accounts to the four defendants in

these actions. *See, e.g.*, Compl. at 5.[3]  Trustee alleges that, at the time of

each of these transfers, CVAH did not owe any debts to the defendants,

and that the corporation did not receive anything of value in return for the

payments. *Id.* 5–6.  Allegedly, the payments were made to satisfy debts

incurred by other individuals or entities, including Koritansky and his

family members. *Id.* at 6.  Trustee alleges that, at the time the payments

were made, CVAH was indebted to IRS and ISTC and could not pay its tax

liabilities. *Id.* at 6.

Trustee claims that CVAH made the transfers with actual intent to

hinder, delay, or defraud IRS and the ISTC. *Id.*  He alleges CVAH's

principals consistently failed to file required tax returns, despite knowing

_____

[3] The earliest transfer identified in any of the complaints in the four
adversary proceedings was made by CVAH to defendant Idaho Power Company
on July 23, 2008, a date just less than six years prior to the date that CVAH filed
its bankruptcy petition, May 27, 2014. *Idaho Power Co.*, Compl. at 5, Dkt. No. 36.

MEMORANDUM OF DECISION – 7

taxes were owed, until after the company ceased doing business. *Id.* at 7.

He also alleges that CVAH had a history of failing to file tax returns, and

avoiding tax payments through the depletion of CVAH's assets. *Id.* at 7.

Trustee claims that, at the time the transfers were made, CVAH was

insolvent, was engaged in business for which its remaining assets were

unreasonably small, and that CVAH's principals believed or should have

believed that it would incur debts beyond its ability to pay as they became

due. *Id.*

### *Procedural Background*

Based on these factual allegations, Trustee argues that, under several

different statutes, he is empowered to avoid and recover the transfers

made by CVAH to the defendants. *See, e.g., City of Many Trees*, Dkt. No. 1.

In the complaints against each of the defendants, Trustee makes three

claims for relief, each premised upon a different statute, or combination of

such statutory provisions.

In "Claim Three" of the complaints, relying upon a trustee's

avoiding power found in § 544(b)(1), Trustee cites the Idaho version of the

MEMORANDUM OF DECISION – 8

Uniform Fraudulent Transfer Act, and in particular, Idaho Code §§ 55-913 and 55-914,[4] as his authority to avoid and recover, as constructive fraudulent transfers, those payments made to the defendants that occurred within the four-year extinguishment period described in those state statutes leading up to the CVAH petition date. *Id.* at 9-10. The motions do not challenge Trustee's right to assert these claims.

However, employing a more novel legal theory, in Claims One and Two of the complaints, again asserting § 544(b)(1) powers, Trustee seeks to "step into the shoes" of the creditor IRS, and thereby, to utilize the longer "look-back" periods found in the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3306, and Internal Revenue Code ("IRC"), 26 U.S.C. § 6502, to recapture any transfers made by CVAH to the defendants within *six* years prior to the petition filing date. *Id.* at 7–9. The motions to dismiss argue that Trustee's Claims One and Two against them fail to state a claim upon which relief may be granted. *See* Rule 7012(b) (making Civil Rule

---

[4] These are the operative provisions of Idaho's version of the Uniform Fraudulent Transfer Act (UFTA), Idaho Code §§ 55-910 to 55-921, adopted in 1987.

MEMORANDUM OF DECISION – 9

12(b) applicable in adversary proceedings).  Stated simply, in the motions,

the defendants argue that Trustee may not invoke either the FDCPA or the

IRC, with their extended limitations or "look-back" periods, as a basis to

avoid transfers under § 544(b)(1).  *See, e.g., City of Many Trees*, Mot. to

Dismiss Claims One and Two, Dkt. No. 40.[5]

Trustee filed the same opposition to each of the motions.  *See, e.g.,*

*City of Many Trees*, Tr.'s Resp., Dkt. No. 55.  Defendants filed replies.  *City*

*of Many Trees*, Def.'s Reply, Dkt. No 63; *Barclays Bank*, Def.'s Reply, Dkt.

No. 56; *Idaho Power*, Def.'s Reply, Dkt. No. 61; *U.S. Bank*, Def.'s Reply, Dkt.

No. 50.  Via these pleadings, the legal issue is clearly framed: Under

§ 544(b)(1), may a bankruptcy trustee employ the transfer avoidance

provisions, including the extended reach-back periods, provided in either

the FDCPA and IRC?  As explained below, the Court's answer to this

question is "yes".

///

---

[5] Because the motions are also essentially identical, for brevity and clarity, the Court will, except where noted, refer to the motion to dismiss in *City of Many Trees*.

MEMORANDUM OF DECISION – 10

### *Legal Standard*

Under Civil Rule 12(b)(6), a motion to dismiss a complaint may be premised upon the plaintiff's failure to state a claim upon which relief can be granted. While the defendants deny most or all of Trustee's allegations against them, for purposes of this decision, the Court must assume they are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The purpose of such a motion is to "test a claim's legal sufficiency." *Beach v. Bank of Am. (In re Beach)*, 447 B.R. 313, 318 (Bankr. D. Idaho 2011) (citing *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). To survive a Rule 12(b)(6) motion, a complaint must plead sufficient facts, which when accepted as true, support a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A claim is plausible so long as it is based on a cognizable legal theory and has sufficiently alleged facts to support that theory. *In re Beach*, 447 B.R. at 318 (*citing Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988))).

"[Under Civil Rule 12(b)(6)], the issue is not whether a plaintiff will

MEMORANDUM OF DECISION – 11

ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." *Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1017 (D.

Idaho 2010) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184

(2005)).

### *Analysis and Disposition*

Via the motions, the defendants do not challenge the adequacy of

Trustee's factual allegations, only his stated legal basis for relief.  To

support the motions, the defendant's make a number of arguments

ranging from their preferred interpretation of the relevant statutes to

policy arguments they feel support their position.  The Court will address

those arguments in the following order.  First, the Court will discuss the

meaning of "applicable law" under § 544(b)(1), and whether the FDCPA

and the IRC may fall within its definition.  Second, the Court will examine

whether a bankruptcy trustee may utilize the six-year look back period in

the FDCPA in light of language within that statute which the defendants

argue suggests otherwise.  Third, the Court will address whether a

bankruptcy trustee has access to an extended look-back period under the

MEMORANDUM OF DECISION – 12

IRC, including whether a bankruptcy trustee is immune from state statutes of limitation standing in the shoes of IRS, and in what ways, if any, Trustee may be limited by restrictions the IRS would have faced outside of bankruptcy.  Fourth, the Court will respond to the defendants' various policy arguments supposedly counseling against allowing a bankruptcy trustee access to the longer look-back avoidance periods under FDCPA and the IRC.  And finally, the Court will consider the defendants' arguments regarding when IRS became a creditor of CVAH, and the impact that timing has on Trustee's right to avoid some of the transfers to the defendants.

**A.    Are the FDCPA and the IRC "applicable law" under § 544(b)(1)?**

**1.    Avoiding Fraudulent Transfers Under the Bankruptcy Code.**

The Code, in § 548(a), sets forth "stand alone" fraudulent transfer avoidance provisions.  They allow a bankruptcy trustee to avoid both actual and constructive fraudulent transfers made by a debtor to another provided, however, they occurred within two years before the date of the

MEMORANDUM OF DECISION – 13

filing of the petition.  *See* § 548(a)(1).

But bankruptcy trustees are not limited to § 548(a) when attempting to avoid fraudulent transfers.  Section 544(b)(1) is also a bankruptcy trustee avoiding power.  Under that Code provision, a trustee may "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . . " As can be seen, the § 544(b)(1) avoiding power is derivative; it allows a trustee, in common parlance, "to step into the shoes" of an unsecured creditor to recover transfers an actual creditor would have been able to recover save for the filing of the bankruptcy case.  *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (quoting *Hayes v. Palm Seedlings Partners (In re Agric. Research & Tech. Grp., Inc.)*, 96 F.2d 528, 534–35 (9th Cir. 1990)).  In doing so, a trustee assumes the status of an unsecured creditor holding a claim in the bankruptcy case, cloaking the trustee with the rights of that creditor.  *Alberts v. HCA Inc. (In re Greater Se. Cmty. Hosp. Corp)*, 365 B.R. 293, 304 (Bankr. D.D.C. 2006); *see also Davis v. Willey*, 263 F. 588 (N.D. Cal.

MEMORANDUM OF DECISION – 14

1920), *aff'd*, 273 F. 397 (9th Cir. 1921) (analyzing § 70e of the Bankruptcy

Act, the predecessor to § 544(b)).[6]

### 2.  "Applicable Law" under § 544(b)(1).

To define the scope of a trustee's § 544(b)(1) avoiding powers, then,

it is necessary to understand the Code's use of the term "applicable law."

In this Court's experience, bankruptcy trustees in this District generally

---

[6] In its discussion of the trustee's § 544(b)(1) avoiding powers, COLLIER ON BANKRUPTCY quotes *Davis*:

> It is well established that the effect of this section is to clothe the trustee with no new or additional rights in the premises over that possessed by a creditor, but simply puts him in the shoes of the latter, and subject to the same limitations and disabilities that would have beset the creditor in the prosecution of the action on his own behalf; and the rights of the parties are to be determined, not by any provision of the [former] Bankruptcy Act, but by the applicable principles of common law, or the laws of the state in which the right of action may arise.  In other words, the [former] Bankruptcy Act merely permits the trustee the rights which the creditor could assert but for the pendency of the bankruptcy [case], and if, for any reason arising under the laws of the state the action could not be maintained by the creditor, the same disability will bar the trustee.

5 COLLIER, ¶ 544.06[3] (quoting *Davis*, 263 F. at 589 (citing COLLIER (10th Ed.), 1042 (f) & (g); and citing *In re Mullen*, 101 F. 413, 418 (D. Mass. 1900); *Holbrook v. Int'l Tr. Co.*, 220 Mass. 150, 107 N.E. 665 (1915)).

MEMORANDUM OF DECISION – 15

rely on Idaho's fraudulent transfer laws as the "applicable law" when

seeking to recover fraudulent transfers avoidable by existing creditors

under § 544(b)(1).  They invoke § 544(b)(1) because the Idaho statutes

target transfers made within four years of bankruptcy, rather than the two-

year look-back period provided in § 548(a)(1).  *Compare* Idaho Code § 55-

918 *with* § 548(a)(1).

  Here, in something of a new foray, Trustee seeks to enlarge the

available look-back period for avoidable transfers to six, and even ten

years, by utilizing the provisions of the FDCPA and the IRC, respectively.

But for Trustee to do so, the transfer avoidance provisions of the FDCPA

and the IRC must constitute "applicable law" for purposes of § 544(b)(1).

The defendants question Trustee's ability to rely on the FDCPA and the

IRC.  But in assigning a plain meaning to § 544(b)(1), the Court concludes

Trustee is correct.

  To resolve this dispute, the Court is guided by two long-standing

rules of statutory construction.  When interpreting the Code, "[t]he

MEMORANDUM OF DECISION – 16

starting point in discerning congressional intent is the existing statutory

text . . . . [W]hen the statute's language is plain, the sole function of the

courts—at least where the disposition required by the text is not

absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540

U.S. 526, 534 (2004). And, in the absence of a contrary definition within the

Code, its words are presumed to have their ordinary meaning. *Ransom v.*

*FIA Card Serv., N.A.*, 562 U.S. 61, 69 (2011) (citing *Hamilton v. Lanning*, 560

U.S. 505, 513 (2010)); *see also U.S. Trustee v. Tamm (In re Hokulani Square,*

*Inc.)*, 460 B.R. 763, 770 (9th Cir. BAP 2011), *aff'd*, 776 F.3d 1083 (9th Cir.

2015) (citing *FDIC v. Meyer*, 510 U.S. 476 (1994)).

To the court, § 544(b)(1) unambiguously provides that a trustee may

avoid any transfer that is voidable under applicable law by a creditor

holding an allowed unsecured claim. "Applicable law", as used in

§ 544(b)(1), should be construed to be a broad term, as the Code contains

no language limiting its meaning, save that the "triggering" creditor into

whose shoes the trustee steps must be able to avoid a transfer under the

MEMORANDUM OF DECISION – 17

selected law. *Mukamal v. Kipnis (In re Kipnis)*, 555 B.R. 877, 882 (Bankr. S.D.

Fla. 2016) (citing *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 711 (Bankr. N.D.

Ill. 2014)).  The language of § 544(b)(1) also does not restrict which of a

debtor's actual creditors a trustee may choose as a vehicle to avoid a

transfer, except that such creditor must hold an unsecured claim that is

allowable under § 502, or not allowable only under § 502(e).  § 544(b)(1);

*Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889, 906

(Bankr. M.D. Ga. 2015).

     Here, Trustee's complaints allege that IRS is the holder of an

allowed unsecured claim against CVAH, something that, at least for

purposes of the motions, the defendants have not questioned.[7]  Thus,

under the plain language of § 544(b)(1), Trustee may step into the shoes of

IRS and, accordingly, may invoke any "applicable law" that IRS could use

---

     [7]  While the details of its claim is not discussed in Trustee's complaint, the
Court speculates that at least a portion of IRS claim in the CVAH bankruptcy
case may be entitled to priority under § 507(a)(8).  And given the age of some of
the tax debts in question, at least a portion of its claim is also likely nonpriority
unsecured.  But § 544(b)(1)'s reference to "a creditor holding an unsecured
claim" does not distinguish between priority and nonpriority unsecured claims.
Therefore, the priority of IRS claim is of no moment in this analysis.

MEMORANDUM OF DECISION – 18

outside of bankruptcy to avoid the targeted transfers to the defendants.  At

the hearing on the motions, with an exception noted below, the defendants

conceded that, but for the CVAH bankruptcy, IRS could have utilized both

the FDCPA and the IRC as a legal basis to avoid the CVAH transfers to the

defendants.  Therefore, under § 544(b)(1), Trustee, exercising the same

rights as IRS, may also look to provisions of the FDCPA and the IRC to

avoid the transfers detailed in his complaints.

Attributing a broad reading to "applicable law" is in line with the

purpose of § 544(b)(1), and the expansive rights it provides to bankruptcy

trustees.  Giving it such a meaning is also consistent with the Supreme

Court's interpretation of the very similar phrase "applicable

nonbankruptcy law" found elsewhere in the Code, in § 541(a)(2).

The purpose of § 544(b)(1), applied in conjunction with the recovery

provisions of § 550, is to restore the bankruptcy estate to the financial

condition it would have enjoyed if the fraudulent transfers had not

occurred.  *Acequia*, 34 F.3d at 812 (citing *Morris v. Kansas Drywall Supply Co.

(In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D. Kan. 1991)).  Indeed, the

MEMORANDUM OF DECISION – 19

primary goal of these statutes is creditor equity and estate restoration, *i.e.*,

putting the estate back where it would have been but for the transfer.

*Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1111–12 (9th Cir. 2010)

(citations and internal quotation marks omitted).  Allowing a trustee to

utilize all available "applicable law" furthers the trustee's ability to

accomplish this purpose.

The Supreme Court has never discussed the meaning of "applicable

law" under § 544(b)(1).  However, in *Patterson v. Shumate*, the Court

interpreted the phrase "applicable nonbankruptcy law" as used in

§ 541(c)(2) of the Code, a provision dealing with the extent of property of

the bankruptcy estate.   In its analysis, it observed that when Congress

intended that applicable law be limited to "state law", it made its intent

known in the Code.  *See Patterson*, 504 U.S. 753, 758 (1992), (explaining that

Congress "knew how to restrict the scope of applicable law to 'state law'

and did so with some frequency", referring to §§ 109(c)(2), 522(b)(1),

523(a)(5), among other sections of the Code).  Therefore, the Court

MEMORANDUM OF DECISION – 20

concluded, that the phrase "applicable bankruptcy law", "encompasses

any relevant nonbankruptcy law, including federal law . . . ." *Id.* at 759.

While *Patterson* did not focus upon "applicable law" as used in § 544(b)(1),

the Court's discussion in that decision is insightful here, because a

common rule of statutory construction assumes that "identical words and

phrases within the same statute should normally be given the same

meaning." *Hall v. U.S.*, 132 S.Ct. 1882, 1892 (2012) (citing *Powerex Corp. v.*

*Reliant Energy Services, Inc.*, 551 U.S. 224, 232 (2007)).  While "applicable

nonbankruptcy law" is not *identical* to "applicable law", the only difference

is that the former describes a more limited set of laws (*i.e.*,

"nonbankruptcy"), while the latter contains no such limitation.  As a

result, the Court is comfortable in concluding here, as the Supreme Court

did in *Patterson*, that had Congress intended to restrict the reach of

"applicable law" in § 544(b)(1), it would have done so expressly.[8]

---

[8] *See, e.g., In re Transcon Lines*, 58 F.3d 1432, 1438–39 (9th Cir. 1995) (relying on *Patterson* in stating "It is also clear that federal statutes, like the Rates Act, constitute "applicable nonbankruptcy law" within the meaning of section 541(c)(1) and "applicable law" within the meaning of section 363(l)."); *but see*

MEMORANDUM OF DECISION – 21

In sum, there is no reason, based upon the phrase's plain meaning, that Congress intended to exclude the FDCPA and the IRC from the "applicable law" available to trustees under § 544(b)(1).

**B.    Does language in the FDCPA limit its use as "applicable law" under § 544(b)(1)?**

Having decided that the FDCPA, in appropriate cases, may constitute "applicable law" for purposes of § 544(b)(1), the Court now turns to the defendants' argument that the specific language of the FDCPA precludes its use by a bankruptcy trustee.  *City of Many Trees*, Mot. to Dismiss at 7, Dkt. No. 40-1.  The defendants urge that the following provision of the FDCPA prohibits Trustee's reliance on that statute in this case: "This chapter shall not be construed to supersede or modify the operation of—(1) Title 11 . . . ."  28 U.S.C. § 3003(c).  Trustee insists this is not so.  *City of Many Trees*, Tr.'s Resp. at 6–8, Dkt. No. 55.

------

*HSBC Bank USA v. Branch (In re Bank of New England Corp.)*, 364 F.3d 344, 363 (1st Cir. 2004) (deciding that, under the approach in *Patterson*, the phrase "applicable nonbankruptcy law" in § 510(a) can refer to either federal or state law, but ultimately relying on state law because no federal statute was available to guide in interpreting subordination agreements).

MEMORANDUM OF DECISION – 22

There are no controlling decisions on this issue; the Ninth Circuit and BAP have yet to decide it.  But a significant majority of the courts that have considered it agree that a bankruptcy trustee may utilize the FDCPA under § 544(b)(1) despite the language highlighted by the defendants here.[9]  The Fifth Circuit, the only circuit level decision on the issue,[10] holds that a bankruptcy trustee may not rely on the FDCPA as the foundation for a § 544(b)(1) avoidance claim because, to allow such, would "impermissibly modify the operation of Title 11."  *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530, 535 (5th Cir. 2012).

---

[9] *See Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889, 905 (Bankr. M.D. Ga. 2015); *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 712 (Bankr. N.D. Ill. 2014); *Tronox Inc. v. Kerr Mcgee Corp. (In re Tronox Inc.)*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013); *Anderson v. Architectural Glass Const., Inc. (In re Pfister)*, 2012 WL 1144540, at *5 (Bankr. D. S.C. Apr. 4, 2012); *Sergeant v. OneWest Bank, FSB (In re Walter)*, 462 B.R. 698, 704–06, 712 (Bankr. N.D. Iowa 2011); *Allred v. Porter (In re Porter)*, 2009 WL 902662, at *20–21 (Bankr. D. S.D. Mar. 13, 2009); *Gurley v. Mills (In re Gurley)*, 222 B.R. 124, 132 (Bankr. W.D. Tenn. 1998).

[10] The defendants also cite to an Eleventh Circuit decision to support their position: *Chambers v. Bendetti (In re Bendetti)*, 2004 WL 1123349 (11th Cir. 2005). However, *In re Bendetti* did not squarely address this issue, and instead, held that the trustee could not step into the shoes of the United States as a creditor because it did not assert a claim against the debtor.  *Id.* at *3.

MEMORANDUM OF DECISION – 23

Moreover, other courts have held the FDCPA can not be utilized as

"applicable law" because language in that act, quoted below, indicates it is

available solely to, and for the benefit of, the United States.  *See MC Asset*

*Recovery, LLC v. Southern Co.*, 2008 WL 8832805, at *1 (N.D. Ga. July 7,

2008); *MC Asset Recovery, LLC v. Commerzbank AG*, 441 B.R. 791, 804 (N.D.

Tex. 2010), *aff'd on this issue by different reasoning, In re Mirant*, 675 F.3d 530.

The decisions of a number of bankruptcy courts are to the contrary.

Absent Ninth Circuit controlling precedent, the Court must decide

which school of thinking to adopt.  The Court respectfully declines to

follow the Fifth Circuit and those courts that have held the language of the

FDCPA prevents a bankruptcy trustee from using its avoidance provisions

via § 544(b)(1).  Instead, because it deems them better reasoned, the Court

adopts what it perceives to be the majority view, and concludes that

nothing in the language of the FDCPA prohibits a bankruptcy trustee from

utilizing the provisions of that law under § 544(b)(1) if the federal creditor

could invoke the FDCPA outside of bankruptcy.

MEMORANDUM OF DECISION – 24

### 1.    The FDCPA.

The FDCPA provides the "exclusive civil procedures for the United

States" to recover a debt.  28 U.S.C. § 3001(a)(1).   It was enacted to

establish "a comprehensive statutory framework for the collection of debts

owed to the United States government."  *United States v. Gelb*, 783 F.Supp.

748, 751 (E.D.N.Y. 1991) (quoting H.R. Rep. No. 101–736, 101st Cong. 2d

Sess., reprinted in 1990 U.S. Code Cong. & Admin. News 6630, 6631)).

The FDCPA includes provisions for the avoidance of fraudulent

transfers.  28 U.S.C. §§ 3301–3308.  In particular, § 3304 of the FDCPA

creates a cause of action in favor of a federal creditor to avoid

constructively fraudulent transfers.[11]  The requirements for avoidance of a

---

[11] FDCPA §§ 3304(a) and (b) provide:

**(a) Debt arising before transfer.**--Except as provided in section 3307, a transfer
made or obligation incurred by a debtor is fraudulent as to a debt to the United
States which arises before the transfer is made or the obligation is incurred if--
    (1)(A) the debtor makes the transfer or incurs the obligation without
    receiving a reasonably equivalent value in exchange for the transfer or
    obligation; and
    (B) the debtor is insolvent at that time or the debtor becomes insolvent as a
    result of the transfer or obligation; or
    (2)(A) the transfer was made to an insider for an antecedent debt, the

MEMORANDUM OF DECISION – 25

transfer under FDCPA § 3304 are essentially identical to that of Idaho's

UFTA.  *Compare* 28 U.S.C. § 3304 *with* Idaho Code §§ 55-913, 914.

However, and importantly, a federal creditor's right to pursue

avoidance of a constructively fraudulent transfer under the FDCPA is

extinguished unless an action to do so is commenced within six years after

the transfer was made, rather than the four years provided in the Idaho

UFTA.  *Compare* 28 U.S.C. § 3306(b)(2) *with* Idaho Code § 55-918(1).  The

ability to access this longer, six-year look-back period under the FDCPA is,

---------------------------------

> debtor was insolvent at the time; and
> (B) the insider had reasonable cause to believe that the debtor was
> insolvent.

**(b) Transfers without regard to date of judgment.**--(1) Except as provided in
section 3307, a transfer made or obligation incurred by a debtor is fraudulent as
to a debt to the United States, whether such debt arises before or after the
transfer is made or the obligation is incurred, if the debtor makes the transfer or
incurs the obligation--
> (A) with actual intent to hinder, delay, or defraud a creditor; or
> (B) without receiving a reasonably equivalent value in exchange for the
> transfer or obligation if the debtor--
> (i) was engaged or was about to engage in a business or a transaction for
> which the remaining assets of the debtor were unreasonably small in
> relation to the business or transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that
> he would incur, debts beyond his ability to pay as they became due.

MEMORANDUM OF DECISION – 26

as might be expected, an attractive feature of the statute to bankruptcy
trustees.

### 2.    "Modify" or "Supersede"

However, as noted above, the defendants cite to § 3003(c)(1) to
support their contention that the FDCPA may not be used by bankruptcy
trustees.  That provision instructs that the FDCPA "shall not be construed
to supersede or modify the operation of—(1) Title 11 . . . ."  28 U.S.C.
§ 3003(c)(1).  Relying on *Mirant's* take on this language, the defendants
argue that Trustee may not utilize the six-year look-back period of the
FDCPA, because to do so would effectively "modify" the operation of the
Code, contrary to the FDCPA's prohibition.  Mot. to Dismiss at 7–9.  The
Court disagrees.

### a.    Does FDCPA expressly prohibit its use by bankruptcy trustees?

Courts have come to different conclusions regarding the import of
the reference to Title 11 (*i.e.*, the Code) in the FDCPA.  For example, in
deciding that allowing a bankruptcy trustee to utilize the six-year look-

MEMORANDUM OF DECISION – 27

back period under the FDCPA in a § 544(b)(1) avoiding action would

indeed impermissibly "modify the operation of Title 11," the Fifth Circuit

looked to one of its prior decisions.  *In re Mirant*, 675 F.3d at 535 (citing

*Matter of Volpe*, 943 F.2d 1452 (5th Cir. 1991)).   In *Volpe*, the Fifth Circuit

examined a provision in ERISA stating that it must not be construed to

modify or impair any law of the United States, or any rule or regulation

issued under any such law.  *Id.* (citing *Volpe*, 943 F.2d at 1452).  The court

concluded that ERISA could not preempt a state exemption law that was

enacted pursuant to § 522(b)(2) of the Code because doing so would

impermissibly "modify" or "impair" the enforcement of the Code.  *Id.*

(citing *Volpe*, 943 F.2d at 1452–53).  After summarizing *Volpe*, the Fifth

Circuit in *Mirant* reasoned, with little additional explanation, that allowing

a bankruptcy trustee to utilize provisions of the FDCPA as applicable law

under § 544(b)(1) would similarly modify the operation of Title 11.  *Id.*

In contrast, and disagreeing with *Mirant*, the bankruptcy court for

the Northern District of Illinois, in *In re Kaiser*, explained its views as to

MEMORANDUM OF DECISION – 28

what constitutes a "modification" of Title 11 in this setting:

> That a different result occurs when the IRS's rights under the
> FDCPA are invoked under § 544 is not a "modification to the
> operation of Title 11," in the same way that altering variables
> in a formula is not a modification of the formula itself.  The
> formula operates as it always does, yet with different results.
> Section 544 is simply an enabling formula. What variables are
> input in section 544 will always change the results but that is
> not a modification of section 544's operation or of the
> operation of title 11 as a whole.

*In re Kaiser*, 525 B.R. 697, n. 11 (Bankr. N.D. Ill. 2014)*; see also Tronox Inc. v.*

*Kerr Mcgee Corp. (In re Tronox Inc.),* 503 B.R. 239, 273 (Bankr. S.D.N.Y. 2013).


In the Court's opinion, the reasoning of the Illinois bankruptcy court

is sound.  While Trustee's ability to invoke the FDCPA as "applicable law"

results in a longer look-back transfer avoidance period than the trustee

would enjoy under either § 548(a)(1) or most state fraudulent transfer

laws, this result does not in any way modify the operation of § 544(b)(1).

Indeed, as discussed above, § 544(b)(1) is an enabling statute; its role in the

Code is not to identify the specific laws a bankruptcy trustee may use to

avoid a transfer.  Rather, its purpose is to allow trustees to generally

MEMORANDUM OF DECISION – 29

invoke applicable laws, *i.e.* all statutes that an unsecured creditor with an

allowed claim in the case could utilize outside of bankruptcy.

Once an "applicable law" is identified in the context of a specific

case, the operation of § 544(b)(1) is complete.  The Code does not attempt

to prescribe how that "applicable law" is to be applied; and nothing in

§ 544(b)(1)'s language suggests that a specific result need be obtained by

application of one "applicable law" over another.  Put another way,

whether the look-back period for avoidance of a fraudulent transfer is six-

years under the FDCPA, rather than four or two-years under other laws, in

no way impacts or changes the operation of § 544(b)(1), or any other

provisions of Title 11, for that matter.

///

### b.   Legislative History

The Court's conclusion is based upon what it considers to be the

unambiguous language of the FDCPA.  If the FDCPA is unambiguous, any

judicial inquiry about its meaning is complete.  *Conn. Nat'l Bank v.*

MEMORANDUM OF DECISION – 30

*Germain*, 503 U.S. 249, 253–54 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there" and "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete").  However, the defendants, relying again on *Mirant*, argue that the statute is ambiguous, and that their proposed interpretation of the FDCPA is supported by the legislative history of § 3003(c).  Mot. to Dismiss at 9.

That *Mirant* ascribes a different meaning to the FDCPA provision in question does not alone sway this Court to find ambiguity in the statute, or to resort to any legislative history to interpret it.  The court in *Mirant* relied solely on its interpretation of "modify" in *Volpe* to hold that allowing bankruptcy trustees to utilize the FDCPA in § 544(b)(1) proceedings would modify Title 11.  In *Volpe*, the court held the law in question would be impermissibly "modified" because it would be preempted.  While the court in Mirant did not explain how preemption is analogous the case at hand, the defendants argue it is a "direct analogy" because, to them, the

MEMORANDUM OF DECISION – 31

practical effect of allowing a bankruptcy trustee to utilize the extended

look-back period of the FDCPA is the discontinued use of § 548 and state

fraudulent transfer law.  *U.S. Bank*, Reply at 3, Dkt. No. 50.[12]  The court

finds this analogy unpersuasive.  Bankruptcy trustees may choose to use

the FDCPA over the Idaho UFTA or § 548 when a federal creditor is

available.  And this will result in the decreased use of the Idaho UFTA and

§ 548 in § 544(b)(1) proceedings.  But to the Court, the decreased use of the

Idaho UFTA and § 548 in favor of the FDCPA is much different than the

FDCPA preempting the Idaho UFTA and § 548.  For that reason, the Court

finds that the *Mirant* court's analysis does not persuade it to find

ambiguity in the statute.

 In any event, the *Mirant* decision, and the case law it relies upon, are

not controlling on this Court, and it respectfully disagrees with their

interpretation of "modify" to the extent it would imply ambiguity in the

---

[12] U.S. Bank cites *Heitkamp v. Dyke*, 943 F.2d 1435 (5th Cir. 1991), the decision *Volpe* relied on in finding ERISA could not preempt the state law, to support this proposition, 943 F.2d 1452.

MEMORANDUM OF DECISION – 32

language of § 3003(c) of the FDCPA.  However, even considering the

legislative history offered by the defendants, and cited by the Fifth Circuit,

the Court's conclusion would not change.

The Court in *Mirant* quoted a statement of House Committee

Chairman Jack Brooks, one of the authors of the final version of the

FDCPA, to support its conclusion that the FDCPA is not applicable law

under § 544(b)(1).  *Mirant*, 675 F.3d at 535.  In making clarifications to

resolve potential ambiguities in the FDCPA's application, and its effect on

other laws, Representative Brooks stated that § 3003(c) "was carefully

worded to make clear that [the FDCPA] would have absolutely no effect

on the Bankruptcy Code, [and that] even provisions of the bankruptcy

code making reference to nonbankruptcy law are to be read as if this act

did not exist."  *Id.* (quoting 136 Cong. Rec. H13288 (daily ed. Oct. 27, 2990)

(statement of Rep. Jack Brooks)).

While the congressman's words might seem to support the

defendants' contentions, relying on this statement to contradict the plain

MEMORANDUM OF DECISION – 33

meaning of FDCPA would assign it too much weight. *In re Tronox*, 503

B.R. at 237. A court must be cautious in relying on a single comment made

by an individual congressman in the process of enacting legislation in

Congress. *N.L.R.B. v. SW General, Inc.*, ___ S.Ct. ___, 2017 WL 1050977

(2017) (instructing that "floor statements by individual legislators rank

among the least illuminating forms of legislative history"); *Garcia v. United

States*, 469 U.S. 70, 76 ("We have eschewed reliance on the passing

comments of one Member [of Congress] . . . .") (citing *Weinberger v. Rossi*,

456 U.S. 25, 35 (1982)); *Weinberger*, 456 U.S. at n. 15 ("The contemporaneous

remarks of a sponsor of legislation are certainly not controlling in

analyzing legislative history."). So here, where the meaning of "modify" is

plain, and there is little need to consult legislative history, the Court

simply cannot rely on the statement of Representative Brooks to the extent

the defendants request. Because it is a statement by a single member of

Congress, the Court declines to call into question the plain meaning of an

unambiguous statute: that a bankruptcy trustee utilizing the six-year look

MEMORANDUM OF DECISION – 34

back period of the FDCPA does not modify the operation of the Code.

For these reasons, the Court holds that allowing the trustee to utilize the six-year look-back period of the FDCPA does not modify the operation of the Code, such that a bankruptcy trustee is precluded from utilizing its provisions as "applicable law" under § 544(b)(1).[13]

///

///

### 3.    "[E]xclusive civil [collection] procedures for the United States"

In addition to § 3003(c), some courts, in declining to allow trustees to access the FDCPA under § 544(b)(1), rest their decisions on the language in § 3001(a), that provides "[t]his chapter provides the exclusive civil

---

[13] The defendants also cite to rules of statutory construction concerning whether the more general provisions of § 544(b)(1), or the specific provisions of 28 U.S.C. § 3003(c)(1), should govern. Mot. to Dismiss at 8. But application of the two statutes is not an "either-or" proposition. In other words, because the Court concludes that allowing Trustee to utilize the FDCPA via § 544(b)(1) does not constitute a modification of the operation of Title 11, and therefore does not violate 28 U.S.C. § 3303(c), these statutes are not inconsistent, and the Court need not address which one controls over the other.

MEMORANDUM OF DECISION – 35

procedures for the United States," as well as other provisions in the

FDCPA that refer solely to "the United States."  *See, e.g.*, 28 U.S.C. §§ 3304,

3306.  The defendants reason, based upon these references, that Congress

intended that the FDCPA be available solely to, and solely for the benefit

of, the United States, and therefore, its provisions should not be utilized by

a bankruptcy trustee under § 544(b)(1).  *MC Asset Recovery, LLC v. Southern*

*Co.*, 2008 WL 8832805, at *1 (N.D. Ga. July 7, 2008); *MC Asset Recovery, LLC*

*v. Commerzbank AG*, 441 B.R. 791, 804 (N.D. Tex. 2010), *aff'd on this issue by*

*different reasoning*, *In re Mirant*, 675 F.3d 530.   In short, the defendants

insist that Trustee can not recover from them under the FDCPA because he

is not the United States.  *City of Many Trees*, Mot. to Dismiss at 7.

　　　If the defendants are correct, what are we to make of § 544(b)(1)'s

unrestricted reference to "applicable law"?  The bankruptcy court in

*Tronox* offered what this Court believes is the appropriate response to the

defendants' argument:

　　　These decisions [denying relief to trustees] fail to give

MEMORANDUM OF DECISION – 36

> sufficient weight to the language and purpose § 544(b) of the
> Bankruptcy Code. The Oklahoma UFTA is also a remedy for
> the "exclusive use" of creditors who can sue under the statute.
> It is incorporated in Federal law because of the operation of §
> 544(b), not because of anything contained in its own text, and
> there is no reason to treat the FDCPA any differently.

*In re Tronox*, 503 B.R. at 274.

The Oklahoma bankruptcy court's observation obviously holds true

for the Idaho UFTA as well.  As explained in more detail below, the focus

of the § 544(b)(1) inquiry is not on whether a bankruptcy trustee may

prosecute an avoidance action, it is on whether the creditor into whose

shoes the trustee has stepped may pursue avoidance.  Congress gave IRS,

as a federal creditor, the power to avoid fraudulent transfers.  That same

Congress decreed that, if an unsecured creditor in the bankruptcy case

could sue to avoid a transfer, the bankruptcy trustee, cloaked with the

same rights as the creditor, could also seek avoidance.  These statutory

grants are not inconsistent.

In addition, denying Trustee access to the six-year look-back period

MEMORANDUM OF DECISION – 37

would especially be inappropriate here.  Under the facts in this case, any

benefit from Trustee's invocation of the FDCPA and recovery of transfers

would inure primarily to IRS.  *See* Compl. at 3–4 (alleging CVAH owes IRS

approximately $1,258,000 in unpaid taxes for the tax years 2009–2013, but

owes its only other creditor, the ISTC, only approximately $279,000 for that

same period).

In sum, the operation of § 544(b)(1) in tandem with the FDCPA is

clear: because IRS, as a federal creditor, could sue the defendants under

the FDCPA to avoid the target transfers, Trustee may also do so.  As a

result, Trustee can also invoke the six-year extinguishment period for such

actions, and nothing in the language of the FDCPA changes that outcome.

**C.    Can a bankruptcy trustee avoid transfers based upon the IRC?**

**1.    Fraudulent Transfers Under the IRC - Generally**

In contrast to the FDCPA, the IRC does not contain fraudulent

transfer avoidance provisions.  Instead, a section of the IRC dealing with

IRS collection powers entitled "transferred assets," provides that:

MEMORANDUM OF DECISION – 38

> The amounts of the following liability shall, except as
> hereinafter in this section provided, be assessed, paid, and
> collected in the same manner and subject to the same
> provisions and limitations as in the case of the taxes with
> respect to which the liabilities were incurred: (1) the liability,
> at law or in equity, of a transferee of property.

26 U.S.C. § 6901.

Under § 6901 of the IRC, instead of suing in court, IRS "can assess

tax liability against a taxpayer who is 'the transferee of assets of a taxpayer

who owes income tax.'"  *Slone v. C.I.R.*, 810 F.3d 599, 604 (9th Cir. 2015)

(citing *Salus Mundi Found. v. Comm'r*, 776 F.3d 1010, 1017 (9th Cir. 2014)).

The Supreme Court has explained that this provision "neither creates nor

defines a substantive liability but provides merely a new procedure by

which the Government may collect taxes."  *Salus Mundi*, 776 F.3d at 1018

(citing *Comm'r v. Stern*, 357 U.S. 39, 42 (1958)).  "Because the section is

'purely a procedural statute,' the Supreme Court looked to state law to

define the 'existence and extent' of 'substantive liabilities.'"  *Id.* (citing

*Stern*, 357 U.S. at 44–45).  "In order to impose tax liability on a transferee, a

MEMORANDUM OF DECISION – 39

court must engage in a two-pronged inquiry . . . . The first prong asks: 'is the party a "transferee" under § 6901 and federal tax law? . . . The second prong . . . asks: 'is the party substantively liable for the transferor's unpaid taxes under state law?'" *Slone v. C.I.R.*, 810 F.3d at 605. Here, Trustee seeks to premise the defendants' substantive liability upon Idaho's fraudulent transfer laws. *See Bresson v. C.I.R.*, 213 F.3d 1173, 1173–1174 (9th Cir. 2000).

IRC § 6901 is not the only means available to IRS to recover transfers made by a taxpayer to another. Rather than "assessing" the transferee, it can also sue to obtain that relief. *See* 26 U.S.C. § 7402; *Culligan Water Conditioning of Tri-Cities, Inc. v. United States*, 567 F.2d 867, 870–71 (9th Cir. 1978) ("[Section 6901] is not mandatory, as appellants suggest; rather, it adds to other methods available for collection. The Service remains free either to demand payment directly, as it did in this case, or to bring court action."). An action by IRS against a transferee from the taxpayer is a "collection suit," and is subject to the ten-year limitation period in IRC

MEMORANDUM OF DECISION – 40

§ 6502.  *Bacon*, 82 F.3d at 825 (citing *United States v. Overman*, 424 F.2d 1142,

1146 (9th Cir. 1970); *United States v. Fernon*, 640 F.2d 609 (5th Cir. 1981)).

For several reasons, the defendants argue that Trustee may not

pursue them by relying on the IRC as he claims in Claim Two of his

complaint.  In broad strokes, they argue that Trustee cannot utilize IRC    §

6901; that, even if can sue them, Trustee is not immune from the state

statute of limitations because he does not exercise the "sovereign power"

of IRS; that certain restrictions that IRS would face outside of bankruptcy

prevent Trustee from accessing an extended look-back period; and, finally,

that allowing Trustee to assert rights under the IRC, with its extended

look-back period, would lead to an absurd result.

### 2.    Trustee's reliance on IRC § 6901 is misplaced.

Trustee's complaint recites that its Claim Two against the

defendants is based upon IRC § 6901, in tandem with the Idaho UFTA.  At

the motion hearing, the defendants argued that Trustee may not invoke

IRC § 6901 for two related reasons: (1) § 6901 is envisions an

MEMORANDUM OF DECISION – 41

administrative process that Trustee can not employ via this adversary

proceeding, and (2) because IRC § 6901 is not a statute under which a

transfer may be avoided by IRS.  The Court agrees with the defendants.

As noted above, § 6901 of the IRC is a purely procedural statute

which grants IRS the authority to assesses liability directly against a

transferee from the taxpayer.  Once assessed, then IRS can resort to various

collections methods to recover the transfer.

IRS makes assessments independent of judicial proceedings.[14]  In

_____

[14] In a slightly different context, the Supreme Court generally explained
tax assessments in the following way:

> In its numerous uses throughout the Code, it is clear that the term
> "assessment" refers to little more than the calculation or recording
> of a tax liability.  *See, e.g.,* 26 U.S.C. § 6201 (assessment authority); §
> 6203 (method of assessment); § 6204 (supplemental assessments);
> 26 CFR § 601.103 (2003).  *See also* Black's Law Dictionary 111 (7th
> ed.1999) (defining "assessment" as the "[d]etermination of the [tax]
> rate or amount of something, such as a tax or damages").  "The
> Federal tax system is basically one of self-assessment," whereby
> each taxpayer computes the tax due and then files the appropriate
> form of return along with the requisite payment.  26 CFR §
> 601.103(a) (2003).  In most cases, the Secretary accepts the
> self-assessment and simply records the liability of the taxpayer.
> Where the taxpayer fails to file the form of return or miscalculates

MEMORANDUM OF DECISION – 42

this case, Trustee does not appear to be using these adversary proceedings

as an alternative to the usual IRS administrative process, nor does the

Court believe that he should be able to.  Rather, through the adversary

proceedings, Trustee has commenced a judicial action against the

defendants to determine the extent of their liability for the target transfers

pursuant to state law.  To the Court, then, these actions are more akin to

those methods IRS may utilize to avoid transfers and establish transferee

---

the tax due, as in this case, the Secretary can assess "all taxes
(including interest, additional amounts, additions to the tax, and
assessable penalties)," 26 U.S.C. § 6201(a), by "recording the
liability of the taxpayer in the office of the Secretary," § 6203.  In
other words, where the Secretary rejects the self-assessment of the
taxpayer or discovers that the taxpayer has failed to file a return,
the Secretary calculates the proper amount of liability and records it
in the Government's books.

To be sure, the assessment of a tax triggers certain consequences.
After the amount of liability has been established and recorded, the
IRS can employ administrative enforcement methods to collect the
tax. §§ 6321–6327, 6331–6334. The assessment of a tax liability also
extends the period during which the Government can collect the
tax.  But the fact that the act of assessment has consequences does
not change the function of the assessment: to calculate and record a
tax liability.

*United States v. Galletti*, 124 S. Ct. 1548, 1553–54 (2004).


MEMORANDUM OF DECISION – 43

liability without an assessment.  Thus, the Court concludes that Trustee's

reliance on § 6901 of the IRC is misplaced.

Even so, in the Court's view, Trustee's citation to § 6901 in Claim

Two is not fatal to his claim.  In addition to IRC § 6901, Trustee also cites to

the Idaho UFTA, Idaho Code §§ 55-913 and 55-914.[15]  Compl. at 8.  As the

IRS could have relied on these provisions to avoid the transfers in question

in a direct action against the defendants in district court, under § 544(b)(1),

Trustee can also.  Therefore, the Court concludes that Trustee has pled a

viable claim pursuant to the § 544(b)(1), the IRC, and state law, to avoid

the targeted transfers.

**3.      May a bankruptcy trustee exercise "sovereign power"?**

Ordinarily, creditors relying upon the transferee liability under the

Idaho UFTA would be restricted by the four-year extinguishment period

in § 55-918.  However, the Supreme Court has held that, as an agency of

---

[15] Claim Two is entitled "AVOIDANCE OF FRAUDULENT TRANSFERS (11 U.S.C. § 544(b)(1) and Idaho Code § 55-913 and § 55-914 and 25 U.S.C. § 6502(a) and § 6901(a))".  Compl. at 8.

MEMORANDUM OF DECISION – 44

the federal government, IRS is not subject to the claim-extinguishment

provisions of state fraudulent transfer laws. *United States v. Summerlin*, 310

U.S. 414, 416 (1940); *see also Bresson*, 213 F.3d at 1177. Highlighting on the

unique characteristics of IRS as a collecting creditor, the defendants

contend that, even if the IRC fits within the meaning of "applicable law"

under § 544(b)(1), a trustee can not exercise the "sovereign power" to

collect taxes. Therefore, they suggest, as compared to IRS, Trustee is not

insulated from the application of Idaho's statutory four-year

extinguishment period for fraudulent transfers. Mot. to Dismiss at 12–13.

There are no case decisions that bind the Court on this issue. But a

clear majority of courts that have considered the question have held that

when a bankruptcy trustee steps into the shoes of IRS under § 544(b)(1),

the trustee is likewise immune to the time limits in state statutes, just as

IRS would be.[16]  Notably, it appears only one court has come to a different

---

[16] See *Vaughan Co. v. Ultimate Homes, Inc. (In re Vaughan Co.)*, 498 B.R. 297
(Bankr. D. N.M. 2013) (citing the following cases allowing a bankruptcy trustee
to be immune to state statutes of limitation: *Oshwerow v. Porras (In re Porras)*, 312
B.R. 81, 97 (Bankr. W.D. Tex. 2004); *Levey v. Gillman (In re Republic Windows &
Doors, LLC)*, 2011 WL 5975256, *9 (Bankr. N.D. Ill. 2011); *Finkel v. Polichuk (In re*

MEMORANDUM OF DECISION – 45

conclusion: *Vaughan Co. v. Ultimate Homes, Inc. (In re Vaughan Co.)*, 498 B.R.

297 (Bankr. D. N.M. 2013).  And since that decision was made, at least two

other courts have disagreed with its reasoning, and have joined the

majority.  *In re Kaiser*, 525 B.R. at 709–14; *In re Kipnis,* 555 B.R. at 881-83.

Having considered this case law, for the reasons that follow, this Court

declines to follow *Vaughan*, and holds that Trustee, standing in the shoes of

IRS, is immune from the Idaho four-year extinguishment period for

fraudulent transfers in this case.

<u>a.</u>    ***Nullum Tempus Occurrit Regi***

The Supreme Court has held, under the rubric *nullum tempus*

*occurrit regi*, or "no time runs against the king", "the United States is not

bound by state statutes of limitation . . . in enforcing its rights."  *Summerlin*,

310 U.S. at 416; *In re Vaughan*, 498 B.R. at 304.  This doctrine "finds its

---

*Polichuk)*, 2010 WL 4878789, *3 (Bankr. E.D. Pa. 2010); *Alberts v. HCA Inc. (In re Greater Se. Comm. Hosp. Corp. I)*, 365 B.R. 293, 304 (Bankr. D. Dist. Col. 2006); *Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*, 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006)).  *See also Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 712 (Bankr. N.D. Ill. 2014) (noting that "cases addressing this issue are few and far between").

MEMORANDUM OF DECISION – 46

modern justification in the policy that public rights, revenues, and

property should not be forfeited due to negligence of public officials."

*S.E.C. v. Rind*, 991 F.2d 1486, 1491 (9th Cir. 1993).  As a result, when

seeking to avoid fraudulent transfers via application of state law, IRS is not

subject to the state's extinguishment period.  *Bresson*, 213 F.3d at

1173–1174.

///

### b.    Stepping into the Shoes of IRS

In a § 544(b)(1) case, the bankruptcy court in *Vaughan* explained that

"*nullum tempus*" is not without limits, and that immunity from state law

limitations operates only to protect the United States' sovereign power to

enforce public rights and protect the public interest.  *In re Vaughan*, 498

B.R. at 304.   In that court's view, because a bankruptcy trustee's exercise of

avoiding powers does not implicate public rights or interests, the trustee

should not be able to ignore the state law limits on the avoiding  power.

The court opined that, in enacting § 544(b)(1), Congress did not intend "to

MEMORANDUM OF DECISION – 47

vest sovereign powers in a bankruptcy trustee and thereby immunize her

from the strictures of state law in the pursuit of her private interests"

because to do so, the court continued, "would pervert the purpose of

*nullum tempus*, which is to immunize the federal government from certain

state laws." *Id.*

Respectfully, it is this Court's view that the analysis in *Vaughan* is

premised upon a faulty conception about the purpose and operation of

§ 544(b)(1). Contrary to the views expressed in that opinion, the equitable

operation of the bankruptcy laws is a matter of critical public interest. As

explained above, a bankruptcy trustee's avoiding powers are essential

tools to ensure that an insolvent debtor's assets are distributed among its

creditors fairly and equitably, a fundamental goal of the Code. Without

the avoiding powers, potential debtors, in concert with creditors and

others, not Congress, could dictate how the debtor's cash and property

were distributed, with the transferees immune from the liability that would

otherwise exist under state and other transfer avoidance statutes. In other

words, allowing a bankruptcy trustee, standing in the shoes of IRS, to

MEMORANDUM OF DECISION – 48

avoid fraudulent transfers promotes the public interest of maintaining

fairness in the bankruptcy process.  Moreover, it also promotes the same

interest as that advanced when IRS seeks to avoid transfers: payment of a

debtor's tax obligations.  Given these laudable goals, applying *nullum*

*tempus* in favor of a bankruptcy trustee representing IRS in an avoiding

action is appropriate.

Moreover, it must again be remembered that Trustee's § 544(b)(1)

avoiding power is derivative; it "permits the trustee to assert the rights

which the creditor could assert but for the pendency of the bankruptcy . . . .

" *Davis*, 263 F. at 589.  So while IRS's "ability to trump the applicable state

statute of limitation may derive from its sovereign immunity, . . . the estate

representative's ability to override that same limitations derives from §

544(b)."  *In re Kaiser*, 525 B.R. at 713 (citing *In re Greater Se. Cmty. Hosp.*

*Corp. I*, 365 B.R. at 304.  Put another way, in this setting, the focus of the

Court is not on whether Trustee is acting in a governmental capacity to

promote public interests, but on whether IRS is doing so.  *Id.* (citing *In re*

MEMORANDUM OF DECISION – 49

*Greater Se. Cmty. Hosp.*, 365 B.R. at 304)).

If Trustee were not allowed to exercise IRS's rights, a curious, and potentially inappropriate, result would obtain.  Because of a debtor's bankruptcy filing, individual creditors, like IRS, are prevented by the Code from exercising its right to pursue transferees of avoidable transfers; only the bankruptcy trustee can pursue avoidance actions.  *See Estate of Spirtos v. One San Bernardino Cty. Superior Court*, 443 F.3d 1172, 1175 (9th Cir. 2006); *In re Conley*, 159 B.R. 323, 324–25 (Bankr. D. Idaho 1993) (citing *Hansen v. Finn (In re Curry & Sorensen, Inc.)*, 57 B.R. 824, 827 (9th Cir. BAP 1986)).  However, IRS benefits from the operation of the bankruptcy laws because its statutory representative, the trustee, can pursue recovery of the transfers standing in its shoes, unconstrained by state-law extinguishment statutes.  While the defendants argue against this model, under their approach, IRS would be deprived of its statutory right to recover the transfers the defendants received, and the trustee would be unable to do so, to the extent the avoidance action came too late under state law.

MEMORANDUM OF DECISION – 50

The Court declines to conclude that the Supreme Court would intend that a doctrine designed to enhance the ability of the United States to enforce its claims against others (*i.e., nullum tempus,* rendering IRS immune from state-law transfer limitations periods), should not be available to IRS's statutory representative simply because the taxpayer/debtor filed a bankruptcy case. The Court prefers to conclude that Congress and the Supreme Court would intend that, if IRS could avoid a fraudulent transfer outside of bankruptcy, § 544(b)(1) enables the bankruptcy trustee, acting on behalf of IRS, to also do so. In this case, absent the bankruptcy case, IRS could have acted, relying on Idaho's statutes, to avoid the transfers to the defendants to satisfy CVAH's unpaid taxes. In pursuit of those transfers, IRS would have been immune from Idaho's four-year extinguishment period because it was engaged in promotion of the public's interest: tax collection. The Court declines to effectively frustrate the purpose of § 544(b)(1), and in the process, to restrict Trustee, now standing in the shoes of IRS, from asserting the same

MEMORANDUM OF DECISION – 51

claims against the defendants as transferees as IRS could.

### 4. Possible restrictions IRS may have encountered outside of bankruptcy.

While, under § 544(b)(1), a trustee benefits from the rights of creditors, it has also been said that the "trustee is chained to the rights of creditors." *Acequia*, 34 F.3d at 809 (citing 4 COLLIER ON BANKRUPTCY 544.03[1] (15th ed. 1994)). Stated differently, the trustee is "subject to the same limitations and disabilities that would have beset the [IRS] in the prosecution of the action on [its] own behalf . . . . " *Davis*, 263 F. at 589. Here, the defendant's make multiple arguments based on restrictions IRS might have faced outside of bankruptcy.

### a. Assessment Before Collection

Based upon case law, the defendants first argue that, prior to CVAH commencing its bankruptcy, the IRS could not have commenced a collection action against them because it had yet to assess liability against them pursuant to IRC § 6901. *City of Many Trees*, Def.'s Reply at 5–6 (citing *Principal Life Ins. Co. v. U.S.*, 95 Fed.Cl. 786, 791 (2010). To them,

MEMORANDUM OF DECISION – 52

assessment under IRC § 6901 is a condition precedent to any other

collection action the IRS might take, and without such an assessment, and

with Trustee lacking the ability to make such an assessment, he cannot

maintain these adversary proceedings against them.[17]  This argument

lacks merit.

First, *Principal Life Ins. Co.*, the authority on which the defendants

rely, is inapplicable to this case.  That decision considered whether an

untimely assessment against a taxpayer could result in a refund of

payments made towards tax liabilities that were not assessed.  95 Fed.Cl.

at 791.  The court made no mention of whether the IRS must assess liability

against transferees before making any attempts to collect from them.

While the defendants correctly note that the court there did state that IRS

does not have access to its "broadest enforcement powers," *i.e.* liens and

levies, until an assessment is made, Trustee is not seeking liens and levies

---

[17] Trustee's complaint contains no allegations about whether IRS has
assessed the defendants for liability for the transfers they received from the
taxpayer CVAH.  The Court therefore presumes, for purposes of this motion, that
no assessment occurred.

MEMORANDUM OF DECISION – 53

here. *Id.* at 791.

As for those courts that have directly addressed whether an assessment must be made against a transferee before IRS may commence a collection action, there is a split in authority. *Compare United States v. Russell*, 461 F.2d 605, 608 (10th Cir. 1971); *United States v. Geniviva*, 16 F.3d 522, 524 (3d Cir. 1994) with *United States v. Schneider*, 1992 WL 472024 (D. N.D. 1992); *United States v. Russell*, 327 F.Supp. 632 (D. Kan. 1971), *rev'd*, 461 F.2d 605 (10th Cir. 1972). While the Court is unaware of any Ninth Circuit precedent on this issue, the court is aware of at least two circuit courts that have considered whether an IRC § 6901 assessment is a prerequisite to IRS's right to pursue a collection action against a transferee. They both held that it is not. *See United States v. Russell*, 461 F.2d 605, 608 (10th Cir. 1971) (citing *Leighton v. United States*, 289 U.S. 506, 507–08 (1933); *United States v. Geniviva*, 16 F.3d 522, 524 (3d Cir. 1994). Granted, both decisions were deciding whether an taxpayer assessment pursuant to IRC § 6901 was a prerequisite to imposing transferee liability under IRC § 6324,

MEMORANDUM OF DECISION – 54

but the principles guiding those decisions are applicable here as well.

In *Russell*, the Tenth Circuit concluded that assessment was not a prerequisite to an action under § 6324 of the IRC because the provisions of § 6901 of the IRC are "not exclusive or mandatory, but are cumulative and alternative to the other methods of tax collection recognized and used prior to the enactment of § 6901 and its statutory predecessors."  461 F.2d at 608 (citing *Leighton*, 289 U.S. 506).  The Ninth Circuit has also concluded that IRS is not limited to utilizing § 6901 of the IRC in seeking recovery from transferees.  *See Culligan Water Conditioning of Tri-Cities, Inc. v. U.S.*, 567 F.2d 867, 870–71 (9th Cir. 1978).  In *Culligan Water*, the Ninth Circuit stated that § 6901 "is not mandatory . . . .   The Service remains free either to demand payment directly, as it did in this case, or to bring court action."  In other words, assessment pursuant to IRC § 6901 is but one path to collection by IRS from a transferee.  Because it is but one option, assessment cannot be a condition precedent to other methods of collection, like bringing a direct suit against the transferee.

MEMORANDUM OF DECISION – 55

For these reasons, the Court joins those courts that have concluded

that an assessment against a transferee is not a condition precedent to IRS,

or in this case, a bankruptcy trustee standing in the shoes of the IRS,

commencing a collection action against a transferee.  Since outside of

bankruptcy, IRS could have commenced a court proceeding to avoid the

transfers in question without making an assessment against the

defendants, Trustee may do the same.

### b.    Exhausting Collection Remedies

Again arguing that, under § 544(b)(1), Trustee is "chained" to any

limitations on the rights of IRS under the IRC, the defendants contend that

Trustee's claim against them fails because IRS may not pursue recovery

from a transferee until it has exhausted its collection remedies against the

transferor-taxpayer.  *City of Many Trees*, Reply Br. at 6–7, Dkt. No. 63

(citing *Gumm v. Comm'r*, 93 T.C. 475 (1989)).

The Court is not persuaded by this argument.  Certainly, IRS need

not exhaust its remedies against the taxpayer before pursuing a transferee

MEMORANDUM OF DECISION – 56

when such efforts would be futile.  *See Gumm v. Comm'r*, 93 T.C. at 484.

Here, the transferor-taxpayer is CVAH, a defunct debtor-corporation in a

chapter 7  bankruptcy case.  IRS is prohibited by the automatic stay from

taking action against CVAH to assess and collect taxes from CVAH since

the bankruptcy petition was filed in 2015.  *See* § 362(a)(1), (6), (8).

Additionally, even assuming IRS had collection rights against CVAH to

exhaust, the Court should not require it to engage in a such meaningless

endeavor to no end.

### 5.    Absurd Result

Finally, the defendants attempt to evade the plain meaning of

§ 544(b)(1) when applied in tandem with the IRC by arguing that allowing

Trustee to assume IRS's collection powers, and to benefit from the

expanded limitations period, leads to an absurd result.  Parroting

suggestions from a recent legal periodical, the defendants contend that,

where, as here, IRS is the triggering creditor, the result is that a trustee

MEMORANDUM OF DECISION – 57

may enjoy an unlimited look-back period in pursuing transfer avoidance.[18]
The defendants suggest that allowing a trustee to assail transfers of any
age would lead to an absurd result Congress surely could not have
intended.

The article cited by the defendants concludes IRS may have an
unlimited look-back period because § 6502 of the IRC is dissimilar to most
reach back periods in that it appears to only limit the time in which the IRS
may initiate a collection action, and not restrict the IRS with a reach-back
period.  One bankruptcy court has directly rejected this argument.  *Kaiser*,
525 B.R. at 710.  But even assuming there is potential for such a reach-back
period, which the Court doubts but will not decide,[19] the Court does not

_____

[18] *Barclays*, Reply at 4–5, Dkt. No. 56 (citing Peter Russin & Meaghan
Murphy, *An Unlimited Reach-Back Period When IRS Is the Triggering Creditor?*, 36-
JAN Am. Bankr. Inst. J. 22 (2017)).

[19] In *Bresson*, applying Summerlin, the Ninth Circuit held that the
extinguishment provisions in state law fraudulent transfers statutes do not apply
to the federal government.  *Bresson*, 213 F.3d at 1178 (relying on *Summerlin*, 310
U.S. 414).  Instead, Trustee seeks to rely on the 10-year limitations period in 26
U.S.C. § 6502.  At the hearing, the Court expressed concern at how this 10-year
period translates into a "look-back" period, since it is measured from the date of
an assessment rather than the date of the transfer, as is found in the

MEMORANDUM OF DECISION – 58

see this as an absurd result for a number of reasons.

First, timeliness under the applicable limitation period is but one element of a constructive fraudulent transfer claim.  A bankruptcy trustee must always prove the other, substantive elements of the claim, such as the debtors' insolvency, lack of reasonably equivalent value for the transfer, and others.  Practically speaking, the burden of proving these elements would seem more onerous, and success less likely, the further back in time the transfer occurred from the bankruptcy petition date.  In other words, the likelihood a trustee may be successful in avoiding transfers occurring seven, eight, ten or more years before the bankruptcy filing will certainly be diminished by the facts in many cases.

Second, the Court declines to conclude that it was absurd for Congress to empower IRS to recover transfers from a taxpayer occurring long ago as a way to increase the agency's ability to collect unpaid taxes.  It

---

extinguishment period in the Idaho UFTA.  *Compare* 26 U.S.C. § 6502 *with* Idaho Code § 55-918.  However, the defendants have not argued this point, nor have the parties briefed it, so the Court will reserve deciding this issue at this point in the litigation.  Especially here, where the six-year extinguishment period under the FDCPA would shield all transfers Trustee seeks to avoid.

MEMORANDUM OF DECISION – 59

is no less absurd that Congress would have similar sympathies for those

trustees tasked with attempting to recover such transfers under § 544(b)(1)

to satisfy the claims of IRS in bankruptcy cases.

**D.    Policy Arguments**

The defendants offer a variety of policy-based arguments to support

their plea that Trustee's claims based upon both the FDCPA and the IRC

should be denied.  Stated directly, the Court simply disagrees that the

relevant policies favor their position.

Of course, to begin, when, as here, a court decides that the law is

clear, it may not resort to policy.  *United States v. Ron Pair Enters.*, 489 U.S.

235, 240–41 (1989).  In this case, as opposed to policy, the Court's

conclusions are, as they must be, firmly rooted in the language of the Code

and other applicable laws.  But even were it to consider the defendant's

arguments, the Court is not persuaded that dismissal of Trustee's claims is

warranted.

**1.    Reduced reliance by bankruptcy trustees upon § 548 and
state transfer avoidance law.**

MEMORANDUM OF DECISION – 60

The defendants first argue that if the Court declines to restrict access by bankruptcy trustees, under § 544(b)(1), to expanded limitations and look-back periods of the FDCPA and the IRC, then state fraudulent transfer avoidance laws and § 548 would be rendered meaningless in bankruptcy cases.

Not so. The Court reiterates that the FDCPA and the IRC will be available to trustees only in those cases that IRS or another federal creditor holds an allowed unsecured claim. This would by no means occur in every, or even most, bankruptcy cases.[20]

Next, focusing upon the theme of the defendants' argument, the Court finds the developing role of § 544(b)(1) in bankruptcy law

---

[20] To be sure, IRS and other federal creditors are frequent participants in bankruptcy cases. But § 544(b)(1) allows a trustee to invoke the longer reach of the FDCPA and the IRC only when the federal creditor holds an allowed *unsecured claim*. In this Court's experience, in many bankruptcy cases, the claims of the government are secured by either consensual or statutory liens. Moreover, that the requisite allowed government unsecured claim is present in a bankruptcy case will not necessarily mean that the debtor has engaged in either actual or constructively fraudulent transfers more than four years before the bankruptcy filing. All things considered, to suggest that the Court's ruling will render § 548(a) and state fraudulent transfer laws insignificant is a stretch.

MEMORANDUM OF DECISION – 61

illuminating.  For example, in considering the expansion of the fraudulent transfer law in bankruptcy, the Ninth Circuit observed that the 1938 amendments to the Chandler Act "brought the full panoply of fraudulent transfer law into federal law", and again, when § 548 and § 544(b)(1) of the Code were enacted in 1978, Congress offered bankruptcy trustees choices in avoiding transfers.  *Decker v. Tramiel (In re JTS Corp.)*, 617 F.3d 1102, 1111 (9th Cir. 2010).  As the Ninth Circuit has noted, bankruptcy trustees and courts regularly apply § 544(b)(1) to test transactions that also fall within the scope of § 548(a).  *In re Acequia*, 34 F.3d 810-11 (citations omitted). Consistent with this history of expansion of the fraudulent transfer law available to bankruptcy trustees, the Court sees no reason in this case to prevent bankruptcy trustees from utilizing the "full panoply of fraudulent transfer law," available under both state and federal law today.  *In re JTS Corp*, 617 F.3d at 1111.  That a trustee may choose to use the laws that are most beneficial to the estate over others is of no moment.

### 2.   Increased Recoveries by Non-Governmental Creditors

MEMORANDUM OF DECISION – 62

The defendants also argue that allowing Trustee to use the extended look-back periods in this case is bad policy because it may lead to large recoveries for non-governmental creditors, even in those cases where IRS's claim is small. *U.S. Bank*, Reply at 4, Dkt. No. 50. This is so because, "while the transfer or obligation must be voidable as against a creditor holding an allowable claim [in the bankruptcy case], the measure of the distribution of recovery is not limited by the creditor's right." *In re Acequia*, 34 F.3d at 809; *In re JTS Corp.*, 617 F.3d at 1111–13. This means that, in those bankruptcy cases, where IRS or another federal creditor holds a small claim, the extended limitations period may work to avoid transfers that far exceed that amount, with any real benefit flowing primarily to the non-governmental creditor.

The fraudulent transfer laws are, at bottom, founded in equity. Debtors should not be able to transfer assets to evade or frustrate payment of valid creditor claims, nor while insolvent, to transfer their property for less than adequate consideration. And, in holding that it was improper to

MEMORANDUM OF DECISION – 63

limit a trustee's recovery under § 544(b)(1) and § 550 to the amount of

unsecured claims in the bankruptcy case, the Ninth Circuit has explained

that, "requiring [defendant] to disgorge wrongfully-transferred funds will

merely make the bankruptcy estate whole."  *In re Acequia*, 34 F.3d at 812.

Recall, the purpose of § 544(b)(1), applied in conjunction with § 550, is to

restore the bankruptcy estate to the financial condition it would have

enjoyed if the fraudulent transfer had not occurred, and the primary goal

is equity and restoration.  *Id.* (internal citations omitted); *In re JTS Corp.*,

617 F.3d 1111-12.

    In the face of this purpose and policy, the defendants' argument that

non-governmental creditors might enjoy a disproportionate benefit from

transfer avoidance in some cases rings hollow.  As for those cases where

the governmental creditor holds a small claim,[21] the Court sees no reason

---

[21]  Of course, this is not such a case.  Here, it is undisputed that IRS holds, by far, the largest creditor's claim, all but dwarfing the claim of the only other creditor, the ISTC.  The lion's share of any distributions made in this case, after paying administrative costs, will go to IRS.  That ISTC may receive some small benefit from the Court's holding here at the cost of IRS is no justification to deprive creditors of any distribution at all.

MEMORANDUM OF DECISION – 64

why this narrow set of potential circumstances should deny Trustee, and

by extension IRS, from being able to benefit from the extended limitations

periods of the FDCPA and the IRC in every case.

Finally, if it is truly a concern to the defendants, they should ask

what sort of policy is promoted by allowing them to escape liability for

many of the alleged avoidable transfers made to them by CVAH as

payment for the debts of others.  If it is shown, as alleged by Trustee, that

their receipt of these funds were diverted away from satisfaction of

CVAH's tax obligations, the defendants' "policy" argument is likely

indefensible.

**E.      Must IRS have been a creditor at the time of the transfer to sustain
avoidance?**

The defendants argue that, even if Trustee may step into the shoes of

IRS, and thereby take advantage of extended look-back periods under the

FDCPA and the IRC, he is limited in this case to avoiding only those

transfers to them that occurred after IRS became a creditor of CVAH,

holding a claim that is "identical" to its petition date claim, which, they

MEMORANDUM OF DECISION – 65

argue, did not occur until IRS made an assessment. *City of Many Trees*,

Reply Br. at 4–5. But this argument is incorrect for at least three reasons.

First, the defendants are wrong in suggesting that IRS's claim did not arise

until it assessed CVAH's tax liability. Second, the defendants are wrong in

suggesting that its petition date claim must be "identical" in dollar amount

to the claim it held at the time of the transfer. And third, in some

circumstances under the avoidance statutes, transfers by CVAH can be

avoided without regard to whether or not IRS was owed taxes at the time

of the transfer.

> **1.     IRS was a CVAH creditor at the latest, on January 1, 2010.**

The defendants argue that because IRS could not take certain

collection actions prior to filing an assessment, its claim did not arise until

it assessed a tax liability against CVAH. *City of Many Trees*, Def.'s Reply at

4–5. Both the FDCPA and Idaho UFTA define a "claim" as "a right to

payment, whether or not the right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed,

MEMORANDUM OF DECISION – 66

undisputed, legal, equitable, secured, or unsecured."  Idaho Code § 55-

910(3); 28 U.S.C. 3301(3).[22]  In contrast, the term "assessment" as used in tax

law refers to "little more than the calculation or recording of a tax liability."

*United States v. Galletti*, 541 U.S. 114, 115 (2004).  Applying these

definitions, the Court concludes the assessment date is an inappropriate

measure for when a claim arises, because IRS holds a "right to payment,"

prior to assessment.  *See also United States v. Kelley*, 539 F.2d 1199, 1203 (9th

Cir. 1976), *cert. denied*, 429 U.S. 963 (1976) ("Tax liability is imposed by

statute independent of any administrative assessment.")

Rather, relying on to the facts alleged in this case, at the latest, IRS

held a right to payment of income taxes from CVAH at the conclusion of

the earliest taxable year pled.  *See, e.g., In re Devries*, 15.2 IBCR 13 (Bankr.

D. Idaho 2015) (citing *In re Pacific—Atlantic Trading Co.*, 64 F.3d 1292,

1299–1300 (9th Cir. 1995)) (explaining that a tax liability is "incurred", and

_____

[22]  This meaning mirrors that of a claim for bankruptcy purposes in
§ 101(5)(A), a definition described by the courts as extremely broad.  *Johnson v.
Home State Bank*, 501 U.S. 78, 83 (1991) (citing *Pennsylvania Dept. of Pub. Welfare v.
Davenport*, 495 U.S. 552, 558–559, 563–564 (1990)).

MEMORANDUM OF DECISION – 67

therefore "payable, immediately upon conclusion of the taxable year for

purposes of §§ 1304(a) and § 502(I)").  Trustee's complaint alleges CVAH

owes taxes for the tax years beginning 2009.  Thus, IRS held a claim, and

was a creditor of CVAH, at the latest, on January 1, 2010.

> **2.     IRS's claim is identical in nature to the tax debts incurred
> by CVAH prior to assessment.**

The defendants next argue that Trustee cannot avoid any transfers

prior to the date IRS assessed liability against CVAH, because it was not

until that time that IRS held a claim "identical," in dollar amount, to its

petition date claim.  *City of Many Trees*, Reply at 5, Dkt. No. 63.  Relying on

*Acequia*, they argue that Trustee cannot avoid a transfer unless the debt

owed at the time of the bankruptcy petition was filed was "identical" to the

debt owed at the time of the challenged transaction.  *Id.* (citing *Acequia*, 34

F.3d at 808).  But it is clear that claims need only be identical in their

natures, not in amount.  *Acequia*, 34 F.3d at 808 (citing *Unsecured Creditor's*

*Committee v. Banque Paribas (In re Heartland Chemicals, Inc.)*, 103 B.R. 1012,

1016 (Bankr. C.D. Ill. 1989) (focusing on whether the nature of the claim is

MEMORANDUM OF DECISION – 68

identical).  As the tax debts that accrued at the end of each tax year are

identical in nature to those comprising the basis of IRS's bankruptcy claim,

this argument is not well taken.

**3.     IRS need not have been a creditor at the time of the transfers under some of the statutes invoked by Trustee.**

Finally, while the defendants do not dispute that IRS holds an

allowed unsecured claim in the bankruptcy that existed at the time the

bankruptcy petition was filed, relying on the court's language in *In re*

*Acequia*, the defendants insist that, for the transfers they received to be

avoidable, IRS must have been a creditor at the time each transfer was

made.  But this is not an entirely accurate statement of the law.

Both the Idaho fraudulent transfer statutes and the FDCPA contain

distinct provisions describing transfers that may be avoided by either

creditors that existed at the time of the subject transfer, and those transfers

that may be avoided by existing *and future* creditors.  *Compare* Idaho Code

§ 55-913 (present creditors) *with* § 55-914 (present and future creditors);

*Compare* 28 U.S.C. § 3304(a) (debts arising before transfer) *with* 28 U.S.C.

MEMORANDUM OF DECISION – 69

§ 3304(b) (transfers without regard to date of judgment).  Simply put,

whether a transfer is fraudulent as to, and therefore recoverable on behalf

of, only existing creditors depends on the statute invoked by the trustee to

support the avoidance claim.

It is true, as the defendants argue, that the Ninth Circuit in *In re*

*Acequia* stated that "the existence of a cause of action 'depends on whether

. . . a creditor existing at the time the transfers were made . . . still had a

viable claim against [the] debtor *at the time the bankruptcy petition was filed*."

*Acequia*, 34 F.3d at 807 (citing *Karnes v. McDowell (In re McDowell)*, 87 B.R.

554, 558 (Bankr. S.D. Ill. 1988)) (emphasis in original).  Despite this, the

Court is persuaded that the Ninth Circuit did not intend this statement to

require that the triggering creditor exist at the time of the transfer in *all*

§ 544(b)(1) fraudulent transfer actions.[23]

Instead, given the emphasis added by the Ninth Circuit to a portion

of the sentence in its decision quoted above, the Court concludes the panel

---

[23] The statute at issue in *Acequia* was Idaho Code § 55–916, which was
superseded in 1987 by § 55–913(1)(a).  *Acequia*, 34 F.3d at 807.

MEMORANDUM OF DECISION – 70

intended this statement to establish that a creditor need only exist at the time the bankruptcy petition was filed, and not thereafter. *Acequia*, 34 F.3d at 807 (italicizing *"at the time the bankruptcy petition was filed"*, rather than "a creditor existing at the time of the transfer"). This fact was crucial to its ultimate holding that, even though the triggering creditor's claim had been paid after the bankruptcy was filed, the trustee could nonetheless assert that creditor's rights to avoid the transfers under § 544(b)(1). The *Acequia* court was not deciding whether a creditor needed to be in existence at the time of the transfer to sustain the trustee's claim; the court was only concerned with whether a creditor's claim must exist at the time of the bankruptcy filing. Moreover, the case cited by the Ninth Circuit only stated that the creditor needed to be a creditor at the time of the petition because it was required under the applicable state law being applied in that case. *See In re McDowell*, 87 B.R. at 558 ("in order to succeed in his action to avoid debtor's transfers under Illinois fraudulent conveyances law, the trustee must show that there were creditors existing at the time

MEMORANDUM OF DECISION – 71

debtor made the transfers . . . . ").

Of course, § 544(b)(1) requires that the creditor whose rights the trustee seeks to assert (*i.e.*, IRS) must hold an unsecured claim in the bankruptcy case. According to Trustee's complaint, it does, something the defendants do not contest.

More particularly, though, as in *McDowell*, to the extent Trustee is relying upon either Idaho Code § 55-914 or 28 U.S.C. § 3304(a), both statutes require that IRS be a creditor at the time of the targeted transfers in order to avoid them. But, for those transfers Trustee challenges under Idaho Code § 55-913 and 28 U.S.C. § 3304(b), IRS need not have been a creditor at the time of the transfer. Put another way, whether a creditor needed to be in existence at the time of the transfer or not depends on the "applicable law". *See In re Greater Se. Cmty. Hosp. Corp. I*, 365 B.R. 293, 307 (Bankr. D.D.C. 2006) ("[Trustee for the liquidating trust] need only show that the proofs of claim filed by HHS and IRS establish at least one of these creditors as holding an allowable unsecured claim on the Debtors' petition

MEMORANDUM OF DECISION – 72

date to survive the Defendants' cross-motion."); Alan N. Resnick, *Finding the Shoes That Fit: How Derivative Is the Trustee's Power to Avoid Fraudulent Conveyances Under Section 544(b) of the Bankruptcy Code?*, 31 Cardozo L. Rev. 205, 210–11 (2009).

In addition to whether the triggering creditor must have existed at the time of the transfer, the other major difference between the two types of avoiding statutes is the context in which the target transfer was made. That is, for some transfers to be avoidable, (1) the debtor must have been insolvent at the time of the transfer, or have became so as a result; and (2) only creditors that existed at the time of the transfer may avoid it. Idaho Code § 55-914(1); 28 U.S.C. § 3304(a). But if the transfer was made when the debtor was "engaged or was about to engage in business . . . for which the remaining assets of the debtor were unreasonably small in relation to the business" or when the debtor "intended to incur, or believed or reasonably should have believed" it would incur debts it "could not pay when they became due," a creditor may avoid the transfer "whether its

MEMORANDUM OF DECISION – 73

claim arose before or after the transfer was made." Idaho Code § 55-913(1)(b); 28 U.S.C. § 3304(b)(1)(B). A creditor may also avoid a transfer "whether its claim arose before or after the transfers was made" if the transfer was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." § 55-913(1)(a); 28 U.S.C. § 3304(b)(1)(A).

Here, Trustee alleges that all four conditions allowing avoidance under either the Idaho UFTA or the FDCPA existed at the time that all of the transfers were made by CVAH to the defendants. Compl. at ¶¶ 43 (CVAH made the transfers with actual intent to hinder, delay, or defraud its creditors), 48 (debtor was insolvent), 49 (CVAH's assets were unreasonably small in relation to CVAH's business), 50 (CVAH's principals reasonably believed or should have believed it would incur debts beyond its ability to pay as they became due). Because in this setting, the Court must assume that all well-pled facts are true, the Court concludes that the requirements of all of the statutes allowing IRS to avoid the transfers are met. The defendants' arguments attempting to limit the

MEMORANDUM OF DECISION – 74

transfers trustee may avoid based on the time IRS's claim arose lack merit on this record.[24]

### *Conclusion*

The defendants' Civil Rule 12(b)(6) motions to dismiss Counts One and Two of Trustee's complaints will be denied in these four adversary proceedings. The Court concludes that, under § 544(b)(1), Trustee may step into the shoes of IRS and utilize the transfer avoidance provisions of both the FDCPA and the IRC. In doing so, Trustee benefits from all the rights that would be available to IRS outside of bankruptcy. Because of this, Trustee is immune from Idaho's fraudulent transfer extinguishment period. Moreover, even considering the various statutory limitations IRS would encounter under the IRC in seeking to avoid the transfers to the defendants outside of bankruptcy, the Court concludes that Trustee's

---

[24] Of course, at trial, or in response to a properly-tailored motion for summary judgment, Trustee will be obliged to show the elements of the specific transfer avoidance statutes are satisfied to avoid each specific transfer targeted for recovery. Thus, whether IRS was a creditor when each transfer was made at the time of each transfer could, indeed, be critical to Trustee's claim.

MEMORANDUM OF DECISION – 75

complaint alleges sufficient facts to establish a plausible claim against the

defendants to avoid all of the transfers described in that complaint.

///

///

///


      Separate orders denying the defendants' motions to dismiss will be

entered in each adversary proceeding.

Dated:  May 2, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 76